UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

- against -

COINSEED, INC., and DELGERDALAI
DAVAASAMBUU,

Defendants.

**ORDER**

21 Civ. 1381 (PGG) (SN)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Securities and Exchange Commission (the "SEC") brings this

enforcement action against Defendants Coinseed, Inc. and Delgeradalai Davaasambuu, involving

the alleged offer and sale of approximately $141,000 worth of digital assets called "CSD

tokens," without first registering the CSD tokens as a security or providing material information

to the public alongside the solicitation of the CSD tokens, in violation of Sections 5(a) and 5(c)

of the Securities Act.  (See Cmplt. (Dkt. No. 1))

On August 23, 2021, this Court entered an Order of Default as to Defendants

(Dkt. No. 48), and referred the matter to Magistrate Judge Sarah Netburn for an inquest on

damages.  (Dkt. No. 49)  On January 30, 2023, Judge Netburn issued a Report and

Recommendation ("R&R") recommending that Defendants be held jointly and severally liable

for disgorgement of $141,410 plus pre-judgment interest, and that each Defendant be ordered to

pay a civil monetary penalty of $141,410.  (R&R (Dkt. No. 58) at 11)  No party has filed

objections to the R&R.

For the reasons stated below, the R&R will be adopted in its entirety.

**BACKGROUND**

I.      **FACTS**[1]

The Complaint alleges that Defendant Davaasambuu founded Coinseed, Inc. in

September 2017.  Delgerdalai was Coinseed's CEO, and he also "developed its principal

product, a mobile application that purported to . . . enable users to invest in digital assets."

(Cmplt. (Dkt. No. 1) ¶ 24)  Coinseed marketed itself as a "spare change investing app," that

would "automatically 'round up' the user's purchase to the nearest dollar, . . . withdraw the

difference from the user's bank account, and then invest the difference between the purchase

price and the 'rounded up' amount in a basket of digital assets selected by the user."  (Id. ¶ 27)

The app would also "display all users' portfolios along with their return percentages on its

platform" so that users could "replicate the highest performing portfolios," for which users were

assessed a fee.  (Id. ¶¶ 28-29)

Defendants offered CSD tokens for sale in two rounds, and Davaasambuu wrote

the code underlying the tokens.  (Id. ¶¶ 30-31)  Davaasambuu also "drafted, reviewed, and

approved" marketing materials – referred to as "whitepapers" – that describe the project and the

terms of the offering, including Coinseed's portfolio conversion feature.  The marketing

materials state that proceeds from the sale of tokens will be used to grow, expand, and "scale up

Coinseed."  (Id. ¶¶ 22, 32-35 (alterations omitted))  Defendants told potential investors that, in

exchange for purchasing the tokens, they would receive a share of profits every month.  (Id. ¶¶

---

[1]  Given Defendants' default, the facts alleged in the Complaint are assumed to be true.  See Idir
v. La Calle TV, LLC, No. 19 Civ. 6251 (JGK), 2020 WL 4016425, at *2 (S.D.N.Y. July 15,
2020) ("In the event of a defendant's default, the plaintiff's properly pleaded allegations in the
complaint, except those related to damages, are accepted as true.").

36-38)  Defendants advertised the token offering on their website, and through social media accounts and press releases.  (Id. ¶ 40)

Defendants did not register the offering of CSD tokens with the SEC, and did not provide investors with the type of material information required when soliciting the public.  (Id. ¶¶ 1-4)  Ultimately, Defendants raised at least $141,410 from sales of CSD tokens to hundreds of investors.  (Id. ¶¶ 1, 41)

The SEC claims that Defendants violated Sections 5(a) and 5(c) of the Securities Act (id. ¶¶ 65-67), and seeks an order:  (1) permanently enjoining Defendants from violating Sections 5(a) and 5(c) of the Securities Act and from "participating, directly or indirectly, in any offering of digital asset securities," aside from sales to or from Davaasambuu's personal account; (2) imposing disgorgement on each Defendant; and (3) civil monetary penalties.  (Id. ¶ 8)

## II.     PROCEDURAL HISTORY

The Complaint was filed on February 17, 2021.  (Dkt. No. 1)  On April 6, 2021 the SEC filed an affidavit of service, which states that the Complaint was served on Coinseed on February 26, 2021.  (Dkt. No. 12)  Also on April 6, 2021, Defendant Davaasambuu's waiver of service was filed.  (Dkt. No. 13)  In an April 8, 2021 stipulation, the parties agreed that Defendants' deadline to respond to the Complaint would be extended to June 4, 2021.  (Dkt. No. 14)  On April 9, 2021, this Court so-ordered the stipulation.  (Dkt. No. 15)

On April 22, 2021, Morrison Cohen LLP, counsel for Defendants, moved to withdraw, citing Coinseed and Davaasambuu's failure to respond to counsel's communications despite numerous attempts by counsel to reach them, resulting in an irreparable breakdown of the attorney-client relationship.  (Dkt. Nos. 16, 17)  In the supporting declaration, counsel submits, upon information and belief, that Davaasambuu is currently located in Ulaanbaatar, Mongolia.

(Gottlieb Decl. (Dkt. No. 17) ¶ 7)  On May 7, 2021, this Court conducted a telephone conference concerning Morrison Cohen's motion to withdraw.  (May 7, 2021 Minute Entry)  Despite being directed to attend the May 7, 2021 conference (Dkt. Nos. 20, 21, 23), neither Defendant appeared.  The next day, this Court granted Morrison Cohen's motion to withdraw, and directed Defendants to respond to the Complaint by June 4, 2021.  The Court provided that, if Defendants do not meet this deadline and substitute counsel did not appear by June 11, 2021, the SEC would move for a default judgment in accordance with the Court's Individual Rules.  (Dkt. No. 24) Defendants have not responded to the Complaint, and substitute counsel has not appeared in this action.

On June 23, 2021, the Clerk issued Certificates of Default as to each Defendant. (Dkt. Nos. 33, 35)  On July 1, 2021, the SEC moved by order to show cause for a default judgment against both Defendants.  (Dkt. No. 37)  On July 6, 2021, this Court directed Defendants Coinseed and Davaasambuu to show cause why the Court should not enter a default judgment against them, and set the hearing for July 22, 2021.  (Dkt. No. 42)

On July 12, 2021, the SEC informed this Court that the Manhattan address used to serve Coinseed – which was provided by Defendants' prior counsel – is no longer valid.  The SEC requested permission to serve Coinseed through its registered agent in Delaware and at a Long Island City address located through a public records search, and to adjourn the opposition deadline and hearing date.  (Pltf. Ltr. (Dkt. No. 43) at 1-2)  This Court granted the request, directed that the supplemental service be completed by July 19, 2021, and adjourned the hearing to August 19, 2021.  (Dkt. Nos. 44, 46)

On July 21, 2021, the SEC filed a certificate of service stating that Davaasambu was served with the order to show cause and supporting papers, and this Court's subsequent

orders, by email on July 6, 2021 and July 19, 2021, and that Coinseed was served by mail at the Delaware and Long Island City addresses on July 19, 2021.  (Dkt. No. 45)

On August 19, 2021, this Court held a default hearing.  (Aug. 19, 2021 Minute Entry)  Neither Defendant responded to the SEC's application or appeared for the default hearing.  Accordingly, on August 23, 2021, this Court entered an order of default, and permanently restrained and enjoined Defendants from, inter alia, "violating, directly, or indirectly, Section 5 of the Securities Act."  ((Dkt. No. 48) at 2-3)  That same day, this Court referred the matter to Judge Netburn for an inquest concerning an appropriate disgorgement remedy and civil penalty award.  (Dkt. No. 49)

## III.   JUDGE NETBURN'S R&R

In her R&R, Judge Netburn finds that "the [C]omplaint contains sufficient facts to plead that Defendants sold an unregistered security," based on the Complaint's allegations that "Defendants, without filing a registration statement, advertised and sold a token which entitled its purchasers, with no further action required, to a portion of Coinseed's future earnings[,]" and that "Defendants also explicitly told consumers that the proceeds from the token sales would fund Coinseed's development."  (R&R (Dkt. No. 58) at 6)  Judge Netburn further notes that this Court "has already granted the SEC an injunction against Coinseed on this claim.  And because Defendants never registered CSD with the SEC, the allegations in the [C]omplaint also establish a valid claim of failure to register a security."  (Id.)

As to the SEC's request for disgorgement, Judge Netburn finds that "Defendants' publicly filed Form C states that they received approximately $141,410 in exchange for CSD tokens sold between December 2017 through May 2018."  (Id. at 7 (footnote omitted) (citing Primoff Decl., Ex. M (Dkt. No. 54-14) at 35)  Judge Netburn states that "[t]his amount was

directly derived from Defendants' unlawful conduct, and therefore disgorgement is an

appropriate remedy here."  (Id. at 8)  "Citing Defendant Davaasambuu's 80% interest in

Coinseed, the SEC seeks disgorgement of $113,128 from him, and the remaining $28,282 from

Coinseed.  However, because Davaasambuu is Coinseed's founder, CEO, and majority

stakeholder, [Judge Netburn] recommend[s] the Court hold both Defendants jointly and severally

liable for the full amount of $141,410."  (Id.)

As to the SEC's request for prejudgment interest, Judge Netburn "recommend[s]

pre-judgment interest be calculated from June 1, 2018, at the lower of the average LIBOR or IRS

underpayment rates for each year."  (Id. at 9 (citing S.E.C. v. Wyly, 56 F. Supp. 3d 394, 433

(S.D.N.Y. 2014)))  She reasons that "[t]he SEC filed this action nearly three years after

Defendants' violations, and another two years have passed since," and that "[t]his extended

delay, largely attributable to the SEC and the Court itself, calls into question the fairness of

awarding pre-judgment interest at the IRS underpayment rate, which skews high."  (Id.)

As to the SEC's request for a civil monetary penalty, Judge Netburn states that

"the SEC seeks a civil penalty of $141,410 per Defendant.  Considering Davaasambuu's 80%

ownership interest, his 'gross amount of pecuniary gain' would equal $113,128."  (Id. at 10)

"The most conservative definition of violation would yield two [violations] here [for the sale of

an unregistered security and for the failure to register the security], and a corresponding

maximum first-tier penalty of $226,236."  (Id.)  She further states that "[f]ollowing the SEC's

rationale, Coinseed's 'gross amount of pecuniary gain' would equal $28,282, less than the

default first-tier penalty of $50,000 per violation.  Thus, assuming only two violations,

Coinseed's maximum first-tier penalty would be $100,000."  (Id.)  Judge Netburn concludes that

"[g]iven the blatant nature of Defendants' Securities Act violations, and their knowing failure to

defend against the SEC's allegations, the SEC's requested penalties – a significant downward

departure from the maximum fine available for Davaasambuu, and a more modest upwards

departure for Coinseed – are reasonable."  (Id.)

## STANDARD OF REVIEW

A district court reviewing a magistrate judge's report and recommendation "may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Where, as here, no objections are filed in response

to a magistrate judge's report and recommendation, "a district court need only satisfy itself that

there is no 'clear error on the face of the record' in order to accept the recommendation."  Austin

v. Lynch, No. 10 Civ. 7534 (JPO) (GWG), 2011 WL 6399622, at *1 (S.D.N.Y. Dec. 20, 2011)

(citing Fed. R. Civ. P. 72(b) advisory committee note).  Moreover, the Second Circuit has made

clear that a "party generally waives judicial review of an issue when he or she fails to make

timely objection to a magistrate judge's report, as long as all parties receive clear notice of the

consequences of their failure to object."  DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000)

(citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also

McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983) ("When a party fails to object timely to a

magistrate's recommended decision, it waives any right to further judicial review of that

decision.").

## DISCUSSION

Here, the R&R recites the appropriate deadlines for submission of objections and

the consequences for failing to do so:

> The parties shall have fourteen days from the service of this Report and
> Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and
> Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a),
> (d) (adding three additional days when service is made under Fed. R. Civ. P.

5(b)(2)(C), (D), (E), or (F)). . . . The failure to file these timely objections will
result in a waiver of those objections for purposes of appeal.  See 28 U.S.C. §
636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

(R&R (Dkt. No. 58) at 11)  Despite clear warning that a failure to file objections would result in

a waiver of judicial review, no party has filed objections to the R&R.

Because no party has filed objections to Judge Netburn's R&R, the parties have

waived judicial review.  This Court has, however, reviewed Judge Netburn's eleven-page R&R

and finds it to be thorough, well-reasoned, and free of any clear error.

Accordingly, Judge Netburn's R&R will be adopted in its entirety.

## CONCLUSION

For the reasons stated above, the R&R is adopted in its entirety.  Defendants are

jointly and severally liable for disgorgement of $141,410 plus pre-judgment interest, and each

Defendant must pay a civil monetary penalty of $141,410.

The Clerk of Court is directed to enter judgment, and to close this case.

Dated:  New York, New York
         July 5, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

8